UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JUSTIN DINSDALE, and others<br>similarly situated, | §<br>§<br>§ | |
| Plaintiffs, | §<br>§ | |
| v. | §<br>§ | CIVIL ACTION NO. 3:14-CV-3427-B |
| AD TELAMERICA<br>INCORPORATED, d/b/a Yellow Pages<br>and d/b/a Yellow Pages Directories,<br>and BARBARA J. SOMMER, | §<br>§<br>§<br>§<br>§ | |
| Defendants. | §<br>§ | |

MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Ad TelAmerica, Inc. ("Ad TelAmerica") and Barbara J.

Sommer's Motion to Dismiss Plaintiff's Complaint (doc. 43), filed October 30, 2014. For the reasons

that follow, the Court concludes that Defendants' Motion should be, and hereby is, **GRANTED in**

**part** and **DENIED in part**.

I.

BACKGROUND[1]

On March 13, 2013, Plaintiff Justin Dinsdale filed this class action in federal court on behalf

of himself and other purchasers of Ad Telamerica's "Yellow Pages Directories" advertising service,

asserting claims for (1) common law fraud, (2) violations of the Texas Deceptive Trade Practices

---

[1] The Court draws its factual account from the allegations contained in Plaintiff's Complaint (doc.
1), as well as from the attachments and documents incorporated therein by reference. *Wolcott v. Sebelius*, 635
F.3d 757, 763 (5th Cir. 2011).

Act, (3) false representations under 39 U.S.C. § 3005; (4) fraud and related activity in connection with access devices under 18 U.S.C. § 1029; (5) money had and received; and (6) unjust enrichment against Defendants Ad TelAmerica and Barbara J. Sommer. Doc. 1, Complaint. Plaintiff alleges that Defendants deceptively and fraudulently solicit customers around the country by mailing them a "Final Notice" of payment for the service of listing their businesses in the Yellow Pages Directories, despite the fact that Defendants neither publish nor are affiliated with the Yellow Pages.[2] *See id.* ¶¶ 39–43. This "final solicitation" allegedly (1) claimed or implied a business relationship with the customer; (2) included a final notice of payment due from the customer with the threat that the customer's listing would be omitted from the Directories if the form was not returned; and (3) utilized the Yellow Pages "walking fingers" logo allegedly without ownership rights to the trademarked image. *See id.* In response to such a solicitation, Dinsdale purchased a listing in Defendants' Yellow Pages Directories to advertise his business in 2012, giving rise to his claims in this action. *Id.* ¶¶ 22–25.

Prior to the present lawsuit, actions were filed against Defendants by the United States Postal Service ("USPS") and the Texas Attorney General's Office for similar behavior relating to deceptive mailings and solicitations. Compl. ¶¶ 9–16. Both lawsuits resulted in consent orders being entered against Defendants. Docs. 1-2, Agreement Containing Consent Order to Cease and Dismiss; 1-3, Agreed Final Judgment and Permanent Injunction. Pursuant to these consent orders, Defendants agreed to cease making certain representations in their solicitations. *See id.* Plaintiff now claims that Defendants continue to engage in deceptive and fraudulent practices, in violation of the terms of the

---

[2] The Court (and Plaintiff) refers to the original, commonly-known, multi-billion dollar business, Yellow Pages.

agreements reached with the State and USPS, causing damage to Plaintiff and others similarly situated. Compl. ¶ 17.

On September 22, 2014, Plaintiff's case was transferred from the Southern District of Texas, Brownsville Division to this Court. Thereafter, on October 30, 2014, Defendants filed the instant motion to dismiss Plaintiff's action under Federal Rule of Procedure 12(b)(1) for lack of subject matter jurisdiction or, in the alternative, under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

## II.

## LEGAL STANDARDS

A.      *Rule 12(b)(1)*

A court must dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) where it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998). In ruling on a motion to dismiss for lack of subject matter jurisdiction, a court may evaluate "(1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001); *see also Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981). To the extent the court relies on the complaint alone, however, the court must accept all factual allegations as true. *Id.* "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). If the jurisdictional allegations in the complaint are sufficient,

then the complaint stands. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1983).

B.    *Rule 12(b)(6)*

Rule 12(b)(6) authorizes the court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). The court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotations and alterations omitted).

## III.

## ANALYSIS

A.      *Defendants' Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction*

In moving to dismiss Plaintiff's lawsuit for lack of subject matter jurisdiction, Defendants

argue that Plaintiff has failed to plead any plausible federal claims to support the existence of federal

question jurisdiction, and failed to satisfy the minimal diversity requirement of 28 U.S.C. § 1332(d).

Mot. to Dismiss 2. In response, Plaintiff concedes that he cannot maintain a cause of action under

39 U.S.C. § 3005 or 18 U.S.C. § 1029 and, therefore, that federal question jurisdiction does not

exist, but argues that the requirements of minimal diversity jurisdiction are easily met in this case.

Doc. 46, Response 17.

Pursuant to 28 U.S.C. § 1332(d)(2), this Court has original jurisdiction over "any civil action

in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and

costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State

different from any defendant." Minimum diversity jurisdiction may only be invoked, however, where

the number of members in the plaintiff's proposed class exceeds one hundred. *Id.* § 1332(d)(5).

In an effort to establish the existence of minimum diversity jurisdiction, Plaintiff asks the

Court to examine select pages of listings from Defendants Yellow Pages Directories, as well as an

affidavit from a postal inspector in a prior case. Resp. 13–17. According to Plaintiffs, this evidence

shows that Defendants have solicited businesses in all 50 states and that they illegally collected well

over $5,000,000 dollars from customers. *Id.* Defendants maintain that this evidence is inadmissible

and should not be considered by the Court in deciding whether subject matter jurisdiction exists.

They further insist that when only the allegations in Plaintiff's complaint are considered, diversity

jurisdiction does not exist. Doc. 47, Reply 4–6. The Court need not decide whether Plaintiff's evidence is admissible to establish subject matter jurisdiction, however, because as discussed below, the Court finds the allegations in Plaintiff's complaint sufficient to satisfy the requirements for minimal diversity jurisdiction under 28 U.S.C. § 1332(d)(2).

    1.      Minimal Diversity of Citizenship

Defendants maintains that minimum diversity does not exist here, because both the Defendants and Plaintiff are citizens of Texas, and Plaintiff does not allege diverse citizenship of any other potential class member. Mot. to Dismiss 5. The Court disagrees. While Defendants are correct to point out that both Defendants and Plaintiffs are citizens of Texas and that Plaintiff has not explicitly stated whether any members of the proposed class are citizens of states other than Texas, Plaintiff repeatedly states that Defendants solicited business throughout the United States. Compl. ¶¶ 1, 3, 27, 52a. It stands to reason, therefore, that Plaintiff will be able to prove that at least one member of the proposed class is a citizen of a state other than Texas. Thus, minimal diversity of citizenship exists.

    2.      Amount in Controversy

Defendants also claim that Plaintiff fails to allege plausible facts supporting his conclusion that the amount in controversy for the class will exceed $5,000,000. Mot. to Dismiss 5–6. Again, the Court disagrees. It is well settled that the amount in controversy is determined by the amount claimed by the plaintiff in good faith. *Mas v. Perry*, 489 F.2d 1396, 1400 (5th Cir. 1974). Here, Plaintiff alleges that Ad TelAmerica has sent solicitations to tens of thousands of consumers in Texas alone, and that each consumer who agrees to Defendants' services is charged a semi-annual fee of $298.00. Compl. ¶ 27. Thousands of complaints have also been filed about Ad Telamerica's allegedly

deceptive practices with the Texas Attorney General's office and the USPS. *Id.* ¶ 48. Accepting these facts as true, and drawing all reasonable inferences from them, the Court finds good reason to believe that the amount in controversy in this matter exceeds $5,000,000.

B.      *Defendants' Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim*

In their 12(b)(6) Motion to Dismiss, Defendants first argue that Plaintiff's claims under 39 U.S.C. § 3005 or 18 U.S.C. § 1029 must be dismissed, because those statutes do not create private rights of action. Mot. to Dismiss 2–4, 8. Plaintiff concedes as much in his Response. Resp. 17. As such, Plaintiff's claims under 39 U.S.C. § 3005 or 18 U.S.C. § 1029 are hereby dismissed with prejudice.

Defendants further contend that because Plaintiff has not pleaded any facts to suggest that Defendant Sommer is individually liable for Ad TelAmerica's allegedly deceptive and fraudulent marketing practices, other than to state his belief that she is an officer, owner and primary shareholder of Ad TelAmerica, all of Plaintiff's claims against Sommer must be dismissed. Mot. to Dismiss 8; Reply 6–8. Specifically, Defendants maintain that when pleading fraud under Rule 9(b), it is not enough for Plaintiff to allege that "Defendants" collectively made certain misrepresentations; Plaintiff must allege facts specifically tying Sommer to the alleged misrepresentations. *Id.* In response, Plaintiff argues that regardless of whether Sommer participated in AdTelAmerica's fraudulent and deceptive practices, she may be held personally liable for Ad TelAmerica's conduct under the theory that AdTelAmerica is her "alter ego." Resp. 17–18. After thorough review, the Court concludes that Plaintiff may proceed with his claims against Sommer.

Under Texas law, an officer or director of a corporation may be held liable for the corporation's fraudulent conduct in two ways. First, the officer or director may be held individually

liable for corporate fraud when he or she actively and knowingly participates in it. *See, e.g., Oldham v. Nationwide Ins. Co. of Am.*, No. 3:14-CV-575-B, 2014 WL 3855238, at *8 (N.D. Tex. Aug. 5, 2014) (citing *Commercial Escrow Co. v. Rockport Rebel, Inc.*, 778 S.W.2d 532, 542 n.54 (Tex. App—Corpus Christi 1989, writ denied); *In re Harwood*, 404 B.R. 366, 394 (Bankr. E.D. Tex. 2009) *aff'd*, 427 B.R. 392 (E.D. Tex. 2010) *aff'd*, 637 F.3d 615 (5th Cir. 2011). Second, the officer or shareholder may be held liable for the corporation's conduct if he or she is also an owner or shareholder of the corporation and "caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit" of the owner or shareholder. Tex. Bus. Orgs. Code § 21.233(a)(2), (b). "Actual fraud" requires "dishonesty of purpose or intent to deceive," but is not the same as the common law tort of fraud. *In re Ritz*, 513 B.R. 510, 538 (S.D. Tex. 2014) (quoting *Latham v. Burger*, 320 S.W.3d 602, 607 (Tex. App.—Dallas 2010). The owner or shareholder need not have personally made misrepresentations to the obligee to have engaged in actual fraud. *See id.*

Rule 9(b) of the Federal Rules of Civil Procedure "imposes a heightened level of pleading" in which allegations of fraud must be pled with particularity. *Norfolk S. Ry. Co. v. Trinity Indus., Inc.*, No. 3-07-CV-1905-F, 2009 WL 362437, at *3 (N.D. Tex. Feb. 13, 2009) (citing *Tuchman v. DSC Comm'ns Corp.*, 14 F.3d 1061 (5th Cir. 1994)); Fed. R. Civ. P. 9(b); *see also Hart v. Bayer Corp.,* 199 F.3d 239, 247 n.6 (5th Cir. 2000). The Fifth Circuit requires a plaintiff alleging fraud to "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008). In other words, Rule 9(b) requires the plaintiff to allege with specificity the "time, place, and contents of the false representations, as well as the identity of the

person making the representation and what the person obtained thereby." *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) (quoting *Tuchman v. OSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)). In cases involving multiple defendants, this means that the plaintiff must "specify which Defendant(s) engaged in the alleged conduct or what perceived wrong each Defendant committed." *Bradley v. Phillips Petroleum Co.*, 527 F.Supp.2d 625, 549 n. 46 (S.D. Tex. 2007), *aff'd,* 337 Fed. Appx. 397 (5th Cir. 2009). *See also Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'").

The rule is not intended "to procure punctilious detail," however, and the particularity demanded by Rule 9(b) differs with the facts of each case. *Norfolk S. Ry. Co.*, 2009 WL 362437, at *3 (quoting *Steiner v. Southmark Corp.*, 734 F. Supp. 269, 273 (N.D. Tex. 1990) (Fitzwater, J.)). Moreover, the pleading requirements of Rule 9(b) may be relaxed to some extent where the facts relating to the alleged fraud are peculiarly within the perpetrator's knowledge. *ABC Arbitrage v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002). While fraud may be pleaded on information and belief under such circumstances, the Fifth Circuit has warned that this exception "must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." *U.S. ex rel Willard v. Humana Health Plan of Tex.*, 336 F.3d 375, 385 (5th Cir. 2003) (citing *ABC Arbitrage*, 291 F.3d at 350 n.67). Furthermore, "even where allegations are based on information and belief, the complaint must set forth a factual basis for such belief." *Id.*

Here, Plaintiff has provided a detailed description of the solicitations that Ad TelAmerica sends consumers and the specific misrepresentations that the solicitations expressly or impliedly contain. Compl. ¶¶ 39–43. Plaintiff further alleges that Sommer was personally aware of

AdTelamerica's misrepresentations, but did nothing to disclose them to Plaintiff members of the putative class. *Id.* ¶ 6. Finally, Plaintiff states that it is his belief that Sommer is the owner and primary shareholder of Ad TelAmerica and is responsible, in some manner, for Ad TelAmerica's allegedly deceptive solicitations. *Id.* ¶ 28. Informing this belief is the fact that Sommer previously entered into consent orders with both the Texas Attorney General and the USPS, pursuant to which she agreed to cease using the same or similar solicitations.[3] *Id.* ¶¶ 13–17 & Exs. 2–3. Taken together, the Court finds these allegations sufficient to support the reasonable inference that Sommer has knowledge of, and participates in, Ad TelAmerica's efforts to scam consumers through the use of fraudulent solicitations, and that she stands to benefit personally from them.  Accordingly, the Court finds that Plaintiff has alleged sufficient facts in his complaint to maintain an action against Sommer both in her individual capacity and in her capacity as the owner and primary shareholder of AdTelAmerica.

## IV.

## CONCLUSION

---

[3] Defendants contend that the Court may not consider these consent orders, because they include facts outside the pleadings, and that, in any case, the orders have no bearing on whether Plaintiff has pleaded a plausible claim against Sommer, because they "include[] no factual findings or discussion regarding Sommer's individual involvement, but expressly provide[] that Defendants deny all liability." Reply 7. The Court disagrees with both contentions. First, it is well-established that in deciding a Rule 12(b)(6) motion to dismiss, a court may properly consider "the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Wolcott*, 635 F.3d at 763 (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)). In this case, the consent orders entered into by Sommer are included as attachments to Plaintiff's complaint and referenced therein. They are also public records of which the court may take judicial notice. As such, the Court may properly consider these orders in assessing the sufficiency of Plaintiff's allegations.

Second, although the Court agrees with Defendants that these consent orders have no bearing on Sommer's liability in the present case, this does not prevent Plaintiff from relying on these orders to establish that Sommer is, in some manner, responsible for Ad TelAmerica's solicitations. How else, after all, could she agree to cease using such solicitations individually and on Ad TelAmerica's behalf?

For the aforementioned reasons, the Court **GRANTS** Defendants' Motion to Dismiss (doc. 43) as to Plaintiff's claims under 39 U.S.C. § 3005 or 18 U.S.C. § 1029 and **ORDERS** these claims dismissed with prejudice, but **DENIES** the Motion with respect to the remainder of Plaintiff's claims against Defendant Sommer.

**SO ORDERED.**

**Dated: April 17, 2015.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE